Reversed and Remanded and Memorandum Opinion filed April 19, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00855-CV

___________________

 

Intex Livingspace, LTD., Intex Design, L.L.C.,
Bruce D. Wolfe, and Fred Beiser, Appellants

 

V.

 

Roset USA Corporation, Appellee



 



 

On
Appeal from the 152nd District Court

Harris County,
Texas



Trial Court Cause No. 2010-51720

 



 

 

MEMORANDUM OPINION

          In this interlocutory
appeal, appellants Intex Livingspace, Ltd., Intex Design, L.L.C., Bruce
D. Wolfe, and Fred Beiser[1] appeal the trial court’s order granting the
application of appellee Roset USA Corporation for a temporary injunction. 
Because the order does not comply with the mandatory requirement of Texas Rule
of Civil Procedure 683, we declare the order void and dissolve the injunction.

Background

            In
July 2002, Intex Livingspace, Ltd., and Roset USA executed a dealership
agreement whereby Intex had the exclusive right to purchase and resell Ligne
Roset products in Houston.[2]  A paragraph titled “Conditions of Sale”
provided in part, “Roset’s Standard Conditions of Sale to Resellers (the
“Standard Conditions”) in effect on the date of each order will govern your
purchases of [Ligne Roset] Products.”  The agreement was to expire of its own
terms in May 2007, but the parties continued to operate as if the agreement had
not expired.  By 2008, Wolfe had become the sole member and manager of Intex.[3]  Beiser was a friend and advisor, but was not on
Intex’s payroll.

            For
many years, according to Wolfe, Intex did not have to pay in advance for the orders
it sent Roset.  When Wolfe started working at Intex in 2000, the terms and
conditions of the sales were “Net 30,” meaning payment was due thirty days
after receipt of the product at the warehouse.  Those terms remained in effect
for almost a decade.

            In
January 2010, however, Wolfe estimated Intex owed $350,000 to Roset, but did
not have the ability to pay Roset at that time.  Roset’s Standard Conditions
now required Intex to pay fifty percent of Roset’s invoice amount before it
would release an order for shipment and required Intex to pay the remaining
fifty percent before delivery.  Roset and Intex executed a security agreement
which gave Roset a security interest constituting a lien in all of the “Collateral,”
which comprised Roset goods delivered to Intex and all of Intex’s receivables
from Roset customers.  The security agreement also provided that Intex
would make all of its books and records available to Roset upon request.

By letter dated July 16, 2010, Roset
informed Intex that it would no longer accept orders from Intex but did intend
to honor orders it previously had accepted in writing.  For those orders, Roset
expected payment in full prior to production.  Roset further requested Intex to
remove all signs bearing any of Roset’s trademarks and to discontinue use of
materials identifying Intex as an authorized Roset dealer or its showrooms as
authorized showrooms.  A few days later, Roset, through counsel, made demand
for immediate payment of $385,403.46.

In early August 2010, Intex allegedly vacated the
Houston showroom, leaving very little inside.  Intex left a sign on the front
door referring all inquiries to Roset.  Intex also emailed its customers, again
referring inquiries to Roset.  

On August 18, 2010, Roset filed its original petition
and application for injunctive relief.  Roset alleged causes of action for a
suit on a sworn account, breach of contract, quantum meruit, enforcement of the
security agreement, and fraudulent transfer.  Roset also sought a temporary
restraining order and a temporary injunction.  In support of its request for a
temporary injunction, Roset alleged, in part, that because Intex closed its
stores and left notice to customers to contact Roset, Roset would be “unable to
assist those customers, to verify payment or to assure delivery” and “[s]uch
circumstances [would] do immediate and irreparable harm to the image and brand
of Ligne Roset.”

On August 18, 2010, the trial court signed a
temporary restraining order, setting the hearing on the temporary injunction
for August 27, 2010.  Wolfe and Pierre Delaye, Vice President of Finance of Roset
USA, testified at the hearing.[4]

On August 31, 2010, the trial court signed an order
for a temporary injunction.  The court ordered, in relevant part, that (1) Intex
stop using the Roset name, trademarks, and website, (2) keep all its books and
records and (3) not sell, transfer, or damage any of the Collateral. The court
further ordered Intex, within seven days, to shut down the LigneRosetHouston
website and turn over to Roset its books, records and Collateral.      

In the order, the court set a trial date and set
bond.  The court did not specify the reasons for issuance of the injunction.

Issues Presented

In four issues, Intex
argues the trial court erred in granting the temporary injunction.  Intex contends
(1) the trial court impermissibly altered the status quo between the parties,
(2) Roset failed to show irreparable harm and the trial court did not detail
why irreparable harm would occur if the injunction were not granted, (3) the
trial court impermissibly granted Roset possessory rights, and (4) the trial
court failed to require Roset to produce evidence that Intex was insolvent.

Standard of Review

We review the grant or denial of a temporary
injunction for an abuse of discretion.  Davis v. Huey, 571 S.W.2d 859,
861–62 (Tex. 1978); EMSL Analytical, Inc. v. Younker, 154 S.W.3d 693,
696 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  The trial court abuses its
discretion if it acts arbitrarily and unreasonably, without reference to
guiding rules or principles, or if it misapplies the law to the established
facts of the case.  Law v. William Marsh Rice Univ., 123 S.W.3d 786, 792
(Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Analysis

            In issue two,
Intex argues, in part, that the trial court erred in not detailing why
irreparable harm would occur if it did not grant the temporary injunction. 
Although Roset argued it would be irreparably harmed because, without the
injunction, it would be unable to assist customers and would incur damage to
its image, the order for the injunction does not specify the court’s reasons
for issuing the injunction.

            Texas Rule of
Civil Procedure 683 provides in relevant part, “Every order granting an
injunction and every restraining order shall set forth the reasons for its
issuance; shall be specific in terms; shall describe in reasonable detail and
not by reference to the complaint or other document, the act or acts sought to
be restrained . . . .”  Tex. R. Civ. P. 683; see AutoNation, Inc. v.
Hatfield, 186 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2005, no
pet.).  Merely stating that a party “will suffer irreparable harm” or “has no
adequate remedy at law” does not meet the Rule 683 requirement for specificity. 
AutoNation, 186 S.W.3d at 581.

            “The requirements
of Rule 683 are mandatory and must be strictly followed.  When a temporary
injunction order does not adhere to the requirements of Rule 683, the
injunction order is subject to being declared void and dissolved.”  InterFirst
Bank San Felipe, N.A. v. Paz Constr. Co., 715 S.W.2d 640, 641 (Tex. 1986)
(per curiam); see AutoNation, 186 S.W.3d at 581; Indep. Capital
Mgmt., L.L.C. v. Collins, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no
pet.).  Even if a sound reason for granting relief appears elsewhere in the
record, the Texas Supreme Court states in the strongest terms that Rule 683 is
mandatory.  See State v. United Cook, Inc., 464 S.W.2d 105 (Tex. 1971)
(stating trial court cannot be excused from setting forth specific reasons in
support of injunction).  Thus, a trial court abuses its discretion if it issues
a temporary injunction order that does not comply with the Rule 683
requirements.  Indep. Capital Mgmt., 261 S.W.3d at 795.

            The order in the
present case is completely devoid of any reason for its issuance.  Accordingly,
we sustain Intex’s second issue.  Because of our disposition of this issue, we
need not address Intex’s remaining issues.  Tex. R. Civ. P. 47.1.

Conclusion

            Having sustained
Intex’s second issue, we declare the temporary injunction order void, order the
temporary injunction dissolved, and remand the case for further proceedings
consistent with this opinion.

                                                                                    

                                                            /s/                    Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Jamison, and McCally.

 









[1] Unless necessary to
distinguish among the appellants, we refer to them collectively as “Intex.”





[2] The dealership agreement
refers only to a Houston store.  Other documents and the testimony contain
references to a store in Austin.





[3] Intex represents, without
citation to the record, that Wolfe purchased Intex Livingspace, Ltd. in 2006. 
A form 409 in the record shows Wolfe as the manager and sole member of Intex
Design L.L.C. as of May 27, 2008.





[4] By the time of the
hearing, Intex customers Danny and Isabel David had intervened.  Although they
appeared at the hearing, they are not parties to the present appeal.